## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION | MDL NO. 3094 <br><br> This Document Relates to All Cases <br><br> Judge Karen Spencer Marston |
| Aspasia Kalapothakos, <br> *Plaintiff*, <br><br> v. <br><br> Novo Nordisk, Inc., and <br> Novo Nordisk A/S <br> *Defendants*. | COMPLAINT AND JURY DEMAND <br><br><br> Case No. 2:25-cv-04598 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff files this Complaint pursuant to CMO No. 14, the Direct Filing Order, and is to be bound by the rights, protections, privileges, and obligations of that Direct Filing Order and other Orders of the Court. Further, in accordance with the Direct Filing Order, Plaintiff hereby designates the United States District Court for the District of Arizona, as Plaintiff's designated venue ("Original Venue"). Plaintiff makes this selection based upon the following factors:

Plaintiff currently resides in <u>Maricopa County, Arizona</u>.

Plaintiff used Defendants' products in <u>Maricopa County, Arizona</u>.

☐ The Original Venue is a judicial district in which Defendant resides, and all Defendants are residents of the State in which the district is located (28 U.S.C. § 1391(b)(1)).

**X** The Original Venue is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred (28 U.S.C. §1391(b)(2)): Use of Defendants' products, including Ozempic, in Maricopa County, Arizona.

☐ There is no district in which an action may otherwise be brought under 28 U.S.C. § 1391, and the Original Venue is a judicial district in which Defendant is subject to the Court's personal jurisdiction regarding this action (28 U.S.C. § 1391(b)(3)).

## JURISDICTION AND VENUE

1. This Court has jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1).

2. This Court also has jurisdiction because Plaintiff's claims arise out of Defendants' transaction of business (and tortious acts) within the State of Arizona, and by virtue of Defendants' substantial, continuous, and systematic contacts with the State of Arizona. *Cal. Code Civ. Proc* § 410.10.

3. The Original Venue is the proper venue because Plaintiff used Ozempic, and was injured by Ozempic, in the District of Arizona. 28 U.S.C. § 1391(a).

4. Venue is also proper in this district because Defendants conduct business in this district, and a substantial part of

the acts and omissions giving rise to this complaint occurred in this district. 28 U.S.C. § 1391(b).

## NATURE OF THE CASE

5.    Plaintiff, Aspasia Kalapothakos, brings this case against Defendants, Novo Nordisk Inc. and Novo Nordisk A/S, for the injuries caused by the prescription use of Ozempic.

6.    Ozempic is a prescription drug designed, manufactured, sold, and distributed by Defendants.

7.    Plaintiff suffered injuries, serious physical pain, emotional distress, and incurred medical expenses solely because he used Ozempic as prescribed.

8.    Ozempic, also known as semaglutide, is an injectable medication used for the treatment of diabetes and weight-loss.

9.    Ozempic stimulates insulin production, reduces glucose production, and lowers blood-sugar levels.

10.    Ozempic is a GLP-1 receptor agonist (GLP-1RA).

11.    The risk of gastroparesis is common to the entire class of GLP-1RA drugs, a fact that should have put Defendants on notice of the need to warn patients and prescribing physicians of the risk of gastroparesis associated with Ozempic.

12.    Defendants never warned Plaintiff of the risk of gastroparesis, or the complications associated with gastroparesis, which are caused by the use of Ozempic as prescribed.

13.    Plaintiff suffers from gastroparesis, which cause food intolerance, nausea, emesis, heartburn, flatulence,

indigestion, constipation, diarrhea, jaundice, and severe pain.

## PLAINTIFF

14. Plaintiff is a United States citizen and resident of Maricopa County, Arizona.

15. Plaintiff was prescribed Ozempic for the treatment of diabetes and weight loss from August 2022 until August 2023.

16. Ozempic caused Plaintiff to suffer gastroparesis, pain, suffering, emotional distress, and significant medical expense.

## DEFENDANTS

17. Defendant, Novo Nordisk Inc., is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey. Novo Nordisk Inc. has conducted business and derived substantial revenue within the State of Arizona.

18. Defendant, Novo Nordisk A/S, is a public limited liability company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark. Novo Nordisk A/S has conducted business and derived substantial revenue within the State of Arizona.

19. Defendants' acts and omissions (as described in this complaint) were carried out by its agents, servants, employees, and owners, who acted in the course and scope of their respective roles as agents, servants, employees, or owners.

**FIRST CAUSE OF ACTION**
**(NEGLIGENT FAILURE TO WARN)**

20.   Defendants manufacture Ozempic and market the drug in the State of Arizona.

21.   In Arizona, personal injury actions from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, or labeling of any product are product liability actions subject to the Arizona Products Liability Act.

22.   Under the Act, an adequate warning is calculated to show a reasonably prudent user of the product the nature and the extent of the danger involved with the product's use.

23.   Defendants failed to market Ozempic with adequate warning of its dangers, including gastroparesis, which renders Ozempic defective.

24.   Plaintiff, a reasonably prudent user of Ozempic, received no warning regarding the nature and the extent of the danger involved with the use of Ozempic.

25.   Specifically, neither Plaintiff nor Plaintiff's prescribing physician were warned of the risks of gastroparesis, or the complications associated with these conditions, could result from the use of Ozempic as prescribed.

26.   Defendants had a duty to exercise reasonable care in the design, research, testing, manufacture, marketing, supply, promotion, advertising, packaging, sale, and distribution of Ozempic into the stream of commerce - Including a duty to assure that the product would not cause users to suffer unreasonable, dangerous injuries, such as gallbladder removal, gastroparesis, and comorbid conditions.

27. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic used by Plaintiff.

28. The Ozempic prescribed and given to Plaintiff was delivered, without substantial change, in the same condition it was produced, manufactured, sold, distributed, and marketed by Defendants.

29. Defendants knew, or should have known, that Ozempic was unreasonably dangerous because it contained no adequate warning of the risks of gastroparesis, or the comorbidities associated with this condition.

30. Despite the fact that Defendants knew, or should have known, that Ozempic caused unreasonably dangerous injuries, Defendants continued to market, distribute, and sell Ozempic to consumers, including Plaintiff, without adequate warning of the risk associated with gastroparesis.

31. Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician, without adequate warning of the risk associated with gastroparesis.

32. Defendants could foresee, or should have foreseen, that consumers like Plaintiff would suffer injury because of their failure to provide adequate warning of the risk associated with gastroparesis.

33. Given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

34. Given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

35. At all relevant times, Plaintiff used Ozempic as prescribed and in the manner intended by its instructions for use.

36. The Ozempic given to Plaintiff was defective, due to inadequate warnings or instructions, because Defendants knew or should have known that the product created a risk of serious and dangerous injuries, like gastroparesis, and Defendants failed to adequately warn of these injuries.

37. Defendants also failed to provide adequate warning to users and prescribers of the product, and continued to improperly advertise, market, and promote Ozempic.

38. Ozempic's instructions for use and labels were inadequate because they failed to adequately warn of all possible adverse side effects causally associated its use, including the increased risk of gastroparesis and its sequelae.

39. The labels for Ozempic were inadequate because they failed to adequately warn that Ozempic was not tested for risks involving gastroparesis or its associated conditions.

40. The labels for Ozempic were inadequate because they failed to adequately warn of all possible adverse side effects related to Ozempic.

41. The labels for Ozempic were inadequate because they failed to adequately warn of the severity and duration of adverse effects and did not accurately reflect the symptoms or severity of the side effects.

42. Plaintiff had no way to determine that Defendants' warnings were inadequate and her reliance upon the warnings were thus reasonable.

43. Plaintiff's prescribing physician had no way to determine that Defendants' warnings were inadequate and their reliance upon the warnings were thus reasonable.

44. Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risks of gastroparesis associated with Ozempic, then they would not have prescribed Ozempic, or would have provided Plaintiff with adequate warning as a learned intermediary.

45. Had Plaintiff been warned of the increased risks of gastroparesis associated with Ozempic, Plaintiff would not have used Ozempic or suffered from gastroparesis.

46. Defendants are thus liable for damages to Plaintiff for the design, marketing, promotion, distribution, and sale of Ozempic because it is an unreasonably dangerous product.

47. Ozempic is a defective product, one which created an unreasonable risk to Plaintiff's health, and Defendants are therefore liable for Plaintiff's injuries.

48. Defendants' failure to warn Plaintiff about Ozempic was willful, wanton, and reckless.

49. Defendants' failure to warn Plaintiff about Ozempic was a substantial factor in causing Plaintiff's injuries.

50. Plaintiff suffered permanent, severe injuries, physical pain, mental anguish, diminished enjoyment of life, and the need for lifelong medical treatment because of Defendants' acts and omissions.

## SECOND CAUSE OF ACTION
## (STRICT PRODUCT LIABILITY FAILURE TO WARN)

51. Defendants had a duty to exercise reasonable care in the design, research, testing, manufacture, marketing, supply, promotion, advertising, packaging, sale, and distribution of Ozempic.

52.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic used by Plaintiff.

53.    Ozempic was prescribed and sold to Plaintiff without substantial change in the condition in which it was produced by Defendants.

54.    Defendants knew or should have known that Ozempic was unreasonably dangerous, even when used as prescribed, but failed to warn of the risks of gastroparesis.

55.    Defendants continued to market, distribute, and sell Ozempic to consumers, including Plaintiff, without adequate warning.

56.    Defendants continued to market Ozempic to prescribing physicians, including Plaintiff's prescribing physician, without adequate warning.

57.    Defendants knew or should have known that consumers such as Plaintiff would foreseeably suffer injury as a result of their failure to provide adequate warning of gastroparesis.

58.    At all relevant times, given its increased safety risks, Ozempic was not fit for the ordinary purpose for which it was intended.

59.    At all relevant times, given its increased safety risks, Ozempic did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiff.

60.    At all relevant times, Plaintiff was using Ozempic for the purposes and in a manner normally intended, for the treatment of Type 2 diabetes and weight loss.

61.    The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by

Defendants was defective due to inadequate warnings or instructions, as Defendants knew or should have known that the product created a risk of serious and dangerous injuries, including gastroparesis and its sequelae, as well as other severe and personal injuries which are permanent and lasting in nature, and Defendants failed to adequately warn of the risk.

62.     The Ozempic designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects, including gastroparesis and its sequalae, as well as other severe and permanent health consequences from Ozempic, they failed to provide adequate warnings to users and/or prescribers of the product, and continued to improperly advertise, market and/or promote their product.

63.     The labels for Ozempic were inadequate because they failed to warn and/or adequately warn of all possible adverse side effects causally associated with the use of Ozempic, including the increased risk of gastroparesis and its sequelae.

64.     The labels for Ozempic were inadequate because they failed to warn and/or adequately warn that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae.

65.     The labels for Ozempic were inadequate because they failed to warn and/or adequately warn of all possible

adverse side effects concerning the failure and/or
malfunction of Ozempic.

66.    The label for Ozempic was inadequate because it did not
warn and/or adequately warn of the severity and duration
of adverse effects, as the warnings given did not accurately
reflect the symptoms or severity of the side effects.

67.    Communications made by Defendants to Plaintiff and
Plaintiff's prescribing physician were inadequate because
Defendants failed to warn and/or adequately warn of all
possible adverse side effects causally associated with the
use of Ozempic, including the increased risk of
gastroparesis and its sequelae.

68.    Communications made by Defendants to Plaintiff and
Plaintiff's prescribing physician were inadequate because
Defendants failed to warn and/or adequately warn them
that Ozempic had not been sufficiently and/or adequately
tested for safety risks, including gastroparesis and its
sequelae.

69.    Plaintiff had no way to determine the truth behind the
inadequacies of Defendants' warnings as identified herein,
and her reliance upon Defendants' warnings was
reasonable.

70.    Plaintiff's prescribing physician had no way to determine
the truth behind the inadequacies of Defendants' warnings
as identified herein, and their reliance upon Defendants'
warnings was reasonable.

71.    Upon information and belief, had Plaintiff's prescribing
physician been warned of the increased risks of
gastroparesis and its sequalae causally associated with
Ozempic, then the prescribing physician would not have

prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the dangers of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

72. Upon information and belief, had Plaintiff's prescribing physician been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequelae, the prescribing physician would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

73. Had Plaintiff been warned of the increased risks of gastroparesis and its sequelae, which are causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered from gastroparesis and its sequelae.

74. Had Plaintiff been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis and its sequalae, Plaintiff would not have used Ozempic and/or suffered gastroparesis and its sequelae.

75. Had Plaintiff been warned of the increased risks of gastroparesis and its sequelae causally associated with Ozempic, Plaintiff would have informed Plaintiff's prescribing physician that Plaintiff did not want to take Ozempic.

76. Upon information and belief, if Plaintiff had informed Plaintiff's prescribing physician that Plaintiff did not want

to take Ozempic due to the risks of gastroparesis and its sequelae, or the lack of adequate testing for safety risks, then Plaintiff's prescribing physician would not have prescribed Ozempic.

77. By reason of the foregoing, Defendants have become liable to Plaintiff for the designing, marketing, promoting, distribution and/or selling of an unreasonably dangerous product, Ozempic.

78. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and to Plaintiff in particular, and Defendants are therefore liable for the injuries sustained by Plaintiff.

79. Defendants' inadequate warnings for Ozempic were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

80. Said inadequate warnings for Defendants' drug Ozempic were a substantial factor in causing Plaintiff's injuries.

81. As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous injuries, including gastroparesis and its sequelae, which resulted in other severe and personal injuries which are permanent and lasting in nature, including physical pain, mental anguish, diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above-named health consequences.

82. As a result of the foregoing acts and omissions Plaintiff did incur medical, health, incidental, and related expenses, and

requires and/or will require more health care and services. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## THIRD CAUSE OF ACTION
### (BREACH OF EXPRESS WARRANTY)

83. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

84. At all relevant times, Defendants expressly warranted Plaintiff and Plaintiff's prescribing physician that Ozempic was safe to treat 2 diabetes, reduce cardiovascular risk, and promote weight loss.

85. Defendants assured Plaintiff and Plaintiff's prescribing physician that Ozempic did not carry an increased risk of gastrointestinal complications, including gastroparesis and other related conditions.

86. Defendants delivered their express warranties to Plaintiff and Plaintiff's prescribing physician through Ozempic's labels, website, advertisements, promotional materials, and through their public statements.

87. As a result of Defendants' express warranties, Plaintiff's prescribing physician was induced to prescribe Ozempic to Plaintiff, and Plaintiff was induced to use Ozempic.

88. Defendants anticipated or expected that people like Plaintiff would use Ozempic based upon their express warranties.

89. Defendants anticipated or expected that prescribing physicians, such as Plaintiff's prescribing physician, would recommend, prescribe, and dispense Ozempic based upon their express warranties.

90. Defendants knew or should have known that Ozempic was unreasonably dangerous because of the increased risk of gastroparesis, even when used as instructed.

91. Defendants knew or should have known that Ozempic had not been adequately tested for safety regarding these conditions.

92. The unreasonably dangerous characteristics of Ozempic were beyond those which would be contemplated ordinary users, such as Plaintiff, or those with the ordinary knowledge common to the public as to the drug's characteristics.

93. The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician, with the ordinary knowledge common to prescribing physicians as to the drugs' characteristics.

94. The Ozempic used by Plaintiff did not conform to Defendants' express warranties because Ozempic was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or to promote weight loss, and was instead associated with increased risk of gastroparesis.

95. Defendants' express warnings about Ozempic's safety were made with the intent to induce Plaintiff to use the product, and to induce their prescribing physician to prescribe the product.

96.     Defendants knew, or should have known, that by making the express warranties to Plaintiff and/or Plaintiff's prescribing physician, it would be the natural tendency of Plaintiff to use Ozempic and/or the natural tendency of Plaintiff's prescribing physician to prescribe Ozempic.

97.     Plaintiff, Plaintiff's prescribing physician, and other members of the medical community, relied upon Defendants' express warranties.

98.     Plaintiff would not have used Ozempic but for the express warranties of Defendants.

99.     Upon information and belief, Plaintiff's prescribing physician would not have prescribed Ozempic but for the express warranties of Defendants, or in the alternative, would have provided adequate warning of the dangers of Ozempic, to allow Plaintiff an informed decision.

100.    Had Plaintiff been warned of the increased risks associated with Ozempic, Plaintiff would not have used Ozempic, nor suffered from gastroparesis.

101.    Had Plaintiff been warned that Ozempic had not been sufficiently and/or adequately tested for safety risks, Plaintiff would not have used Ozempic and/or suffered gastroparesis.

102.    Accordingly, Defendants are liable to Plaintiff as a result of their breach of express warranties about the safety of Ozempic.

103.    Defendants' breach of express warranty was a substantial factor in causing Plaintiff's injuries.

104.     Plaintiff's injuries and damages arose from a reasonably anticipated use of Ozempic by Plaintiff.

105.   Plaintiff suffered serious injuries, including gastroparesis, as well as physical pain, mental anguish, and diminished enjoyment of life.

106.   Plaintiff will require more medical monitoring and treatment because of Defendants' breach of their express warranties.

107.   As a result of the foregoing acts and omissions, Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses.

## FOURTH CAUSE OF ACTION
## (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

108.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed the Ozempic prescribed to Plaintiff and used by Plaintiff.

109.   Ozempic was expected to reach and did reach the usual consumers of the drug without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendants.

110.   Defendants delivered implied warranties to Plaintiff, Plaintiff's prescribing physician, and the medical community that Ozempic was of merchantable quality and safe and fit for its ordinary purpose.

111.   Defendants knew, or should have known, that Ozempic was unreasonably dangerous because of its increased risk of gastroparesis, especially when the drug was used in the form and manner as provided by Defendants.

112.   At all relevant times, Defendants knew or should have known that Ozempic had not been sufficiently or adequately tested for safety.

113.   The Ozempic used by Plaintiff failed to confirm to Defendants' implied warranty and was unfit for its ordinary purpose at the time it lefts Defendants' control, because no warning was provided its association with increased risk of gastroparesis.

114.   Defendants reasonably anticipated or expected that prescribing physicians, such as Plaintiff's prescribing physician, would recommend, prescribe, and dispense Ozempic for use by their patients to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk, and to promote weight loss.

115.   At all relevant times, Defendants reasonably anticipated or expected that individuals, such as Plaintiff, would use Ozempic for its ordinary purpose.

116.   Despite the fact that Defendants knew or should have known that Ozempic causes unreasonably dangerous injuries, such as gastroparesis, Defendants continued to market, distribute, and sell Ozempic to consumers, including Plaintiff, without adequate warning.

117.   The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by the ordinary user, such as Plaintiff, with the ordinary knowledge common to the public as to the drugs' characteristics.

118.   The unreasonably dangerous characteristics of Ozempic were beyond that which would be contemplated by Plaintiff's prescribing physician, with the ordinary

knowledge common to prescribing physicians as to the drug's characteristics.

119.    Plaintiff reasonably relied on Defendants' implied warranty of merchantability about Ozempic's safety and efficacy.

120.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

121.    Upon information and belief, Plaintiff's prescribing physician relied on Defendants' implied warranty of merchantability about Ozempic's safety and efficacy.

122.    Upon information and belief, Plaintiff's prescribing physician reasonably relied upon the skill and judgment of Defendants as to whether Ozempic was of merchantable quality and safe and fit for its intended use.

123.    Had Defendants not made these implied warranties, Plaintiff would not have used Ozempic.

124.    Upon information and belief, Plaintiff's prescribing physician would not have prescribed Ozempic, or would have provided Plaintiff with adequate warning of the dangers of Ozempic related to gastroparesis.

125.    Defendants breached Ozempic's implied warranty of merchantability because the drug was not fit for its intended purposes.

126.    Defendants' breaches of the implied warranty of merchantability were a substantial factor in causing Plaintiff's injuries.

127.    As a result of the breach, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis and gastroparesis, which resulted in other severe personal

injuries, physical pain, mental anguish, and diminished enjoyment of life.

128. As a result of the foregoing acts and omissions, Plaintiff incurred medical, health, incidental, and related expenses.

## FIFTH CAUSE OF ACTION
## (FRAUDULENT CONCEALMENT)

129. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Ozempic, which was used by Plaintiff as described in this complaint.

130. Defendants knew or should have known that Ozempic had not been adequately or sufficiently tested for safety.

131. Defendants knew or should have known that Ozempic was unreasonably dangerous, because of the increased risk of gastroparesis, especially when the drug was used in the form and manner as provided by Defendants.

132. Defendants had a duty to disclose material information about Ozempic to Plaintiff. and Plaintiff's prescribing physician - That Ozempic is associated with increased risk of gastroparesis, and because Defendants have superior knowledge of the drug and its dangerous side effects, this material information is not readily available to Plaintiff or Plaintiff's prescribing physician by reasonable inquiry, and Defendants knew or should have known that Plaintiff and Plaintiff's prescribing physician would act on the basis of mistaken knowledge.

133. Nonetheless, Defendants consciously and deliberately withheld and concealed from Plaintiff's prescribing

physician, Plaintiff, the medical community, and the general public this material information.

134. Although the Ozempic labels lists nausea, vomiting, diarrhea, abdominal pain, and constipation as common adverse reactions reported in Ozempic patients, it does not mention gastroparesis, or conditions related to gastroparesis, as risks of taking Ozempic, nor do the labels disclose that these conditions can be chronic.

135. Defendants' promotional website for Ozempic does not disclose that Ozempic is associated with increased risk of gastroparesis.

136. Defendants' omissions and concealment of material facts were made purposefully, willfully, wantonly, and recklessly, and intended to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician, and adult Type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and/or consume Ozempic for treatment of Type 2 Diabetes.

137. Defendants knew or should have known that Plaintiff's prescribing physician would prescribe, and Plaintiff would use Ozempic without awareness of the risk of serious side effects.

138. Defendants knew that Plaintiff and Plaintiff's prescribing physician had no way to determine the truth behind Defendants' concealments and misrepresentations surrounding Ozempic.

139. Upon information and belief, Plaintiffs prescribing physician justifiably relied on Defendants' material misrepresentations when making the decision to dispense, provide, and prescribe Ozempic.

140. Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risk of gastroparesis associated with Ozempic, they would not have prescribed Ozempic, or would have provided Plaintiff with adequate information regarding the increased risk of gastroparesis.

141. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions when making the decision to purchase and use Ozempic.

142. Had Plaintiff been informed of the increased risks associated with Ozempic, Plaintiff would not have used Ozempic, nor suffered from gastroparesis.

143. Defendants' fraudulent concealment was a substantial factor in causing Plaintiff's injuries.

144. As a direct and proximate result Defendants' fraudulent concealment, Plaintiff was caused to suffer gastroparesis and gastroparesis, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish.

145. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## SIXTH CAUSE OF ACTION
## (FRAUDULENT MISREPRESENTATION)

146. Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed

Ozempic, which was used by Plaintiff as described in this complaint.

147. At all relevant times, Defendants knew or should have known that Ozempic had not been adequately and/or sufficiently tested for safety.

148. At all relevant times, Defendants knew or should have known of the serious side effects of Ozempic, including gastroparesis.

149. At all relevant times, Defendants knew or should have known that Ozempic was not safe to improve glycemic control in adults with type 2 diabetes, reduce cardiovascular risk in patients with type 2 diabetes, or promote weight loss, given the increased risk of gastroparesis.

150. Nonetheless, Defendants made material misrepresentations to Plaintiff, Plaintiff's prescribing physician, the medical community, and the general public regarding the safety and efficacy of Ozempic.

151. Defendants represented affirmatively, by omission on television advertisements, and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of the increased risks of gastroparesis causally associated with using Ozempic.

152. Defendants were aware or should have been aware that its representations were false or misleading and knew that they were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician, the medical community, and the general public.

153. Defendants' misrepresentations of material facts were made purposefully, willfully, wantonly, and/or recklessly in order to mislead and induce medical and healthcare providers, such as Plaintiff's prescribing physician, and adult Type 2 diabetes patients, such as Plaintiff, to dispense, provide, prescribe, accept, purchase, and take Ozempic.

154. Upon information and belief, Plaintiff's prescribing physician had no way to determine the truth behind Defendants' false or misleading statements, concealments and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants.

155. Upon information and belief, Plaintiff's prescribing physician justifiably relied on Defendants' material misrepresentations when making the decision to prescribe Ozempic to Plaintiff as a learned intermediary.

156. Upon information and belief, had Plaintiff's prescribing physician been informed of the increased risks associated with Ozempic, Plaintiff's prescribing physician would not have prescribed Ozempic, or would have provided Plaintiff with adequate information regarding its safety.

157. Plaintiff had no way to determine the truth behind Defendants' misleading statements, concealments, and omissions surrounding Ozempic, and reasonably relied on false and/or misleading facts and information disseminated by Defendants.

158. Plaintiff justifiably relied on Defendants' material misrepresentations, including the omissions contained

here, when making the decision to purchase and use
Ozempic.

159.    Had Plaintiff been told of the increased risk of
        gastroparesis associated with Ozempic, Plaintiff would not
        have used Ozempic, nor suffered gastroparesis and
        gastroparesis.

160.    As a direct and proximate result of Defendants' false
        representations and omissions, Plaintiff was caused to
        suffer serious and dangerous injuries.

### SEVENTH CAUSE OF ACTION
### (NEGLIGENT MISREPRESENTATION)

161.    Defendants designed, researched, manufactured, tested,
        advertised, promoted, marketed, sold, and distributed
        Ozempic, which was used by Plaintiff as described in this
        complaint.

162.    Defendants knew or should have known that Ozempic had
        not been adequately or sufficiently tested for safety.

163.    Defendants knew or should have known of the serious side
        effects of Ozempic, including gastroparesis.

164.    Defendants had a duty to disclose material information
        about Ozempic to Plaintiff and Plaintiff's prescribing
        physician that Ozempic is causally associated with
        increased risk of gastroparesis, because Defendants held a
        special expertise with respect to Ozempic, Plaintiff, as a
        user of Ozempic, had a special relationship of trust with
        Defendants, and Defendants knew that their statements
        regarding the risks causally associated with Ozempic
        would be relied on by Ozempic users.

165. Defendants knew or should have known of the serious side effects of Ozempic, including gastroparesis.

166. Defendants made material misrepresentations and omissions and/or concealments to Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community at large, and the general public regarding the safety and/or efficacy of Ozempic.

167. Defendants represented affirmatively and by omission on television advertisements and on the label of Ozempic that Ozempic was a safe and effective drug for treatment of adults with Type 2 diabetes, despite being aware of the increased risks of gastroparesis causally associated with using Ozempic.

168. Defendants were aware or should have been aware that their representations were false or misleading and/or knew that Defendants were concealing and/or omitting material information from Plaintiff, Plaintiff's prescribing physician[s], the medical and healthcare community, and the general public.

169. Defendants knew that Plaintiff and Plaintiff's prescribing physicians (s) had no way to determine the truth behind Defendants' misrepresentations and concealments surrounding Ozempic, as set forth herein.

170. Upon information and belief that Plaintiff's prescribing physician justifiably relied on Defendants' material misrepresentations when making the decision to prescribe Ozempic to Plaintiff.

171. Upon information and belief, had Plaintiff's prescribing physician been warned of the increased risk of gastroparesis causally associated with Ozempic, they would

not have prescribed Ozempic and/or would have provided Plaintiff with adequate information regarding safety of Ozempic so as to allow Plaintiff to make an informed decision regarding Plaintiff's use of Ozempic.

172.  Upon information and belief, had Plaintiff's prescribing physician been told that Ozempic had not been sufficiently and/or adequately tested for safety risks, including gastroparesis, they would not have prescribed Ozempic and/or would have provided Plaintiff with adequate warnings regarding the lack of sufficient and/or adequate testing of Ozempic so that Plaintiff can make an informed decision regarding Plaintiff's use of Ozempic.

173.  Plaintiff reasonably relied on the false and/or misleading facts and information disseminated by Defendants, which included Defendants' omissions of material facts in which Plaintiff had no way to know were omitted.

174.  Had Plaintiff been told of the increased risk of gastroparesis causally associated with Ozempic, Plaintiff would not have used Ozempic and/or suffered gastroparesis.

175.  Defendants' misrepresentations and omissions of material facts amount to willful, wanton, and/or reckless conduct.

176.  As a direct and proximate result of the above stated false representations and/or omissions as described herein, Plaintiff was caused to suffer serious and dangerous injuries including gastroparesis, which resulted in other severe and personal injuries which are permanent and lasting in nature, physical pain, and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or

medications, and fear of developing any of the above-named health consequences.

177.   As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will require future medical and/or hospital care, attention, and services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants on each of the above-referenced claims and Causes of Action and as follows:

1.   Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs, as provided by law.

2.   Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants, who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct.

3.   Awarding Plaintiff, the costs of these proceedings.

4.   And such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

_/s/ Trent B. Miracle_
**Flint Cooper Cohn Thompson & Miracle**
222 E. Park St., Suite 500
Edwardsville, IL 62025
Phone: (618) 288-4777
tmiracle@flintcooper.com
**Attorneys for Plaintiff**